# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Michael G.,

      Plaintiff,

v.

Frank Bisignano,[1]
*Commissioner of Social Security*,

      Defendant.

Case No. 24-cv-02160 (ECT/ECW)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Michael G.'s ("Plaintiff") Complaint seeking judicial review of a final decision by the Commissioner denying his application for supplemental security income.  (*See generally* Dkt. 1.)  Plaintiff has filed a brief "present[ing] for decision" Plaintiff's request for judicial review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant").[2]  (*See* Dkt. 13.)  The Commissioner has filed a Motion for Summary Judgment.  (Dkt. 15.)

---

[1]    The Complaint named Martin O'Malley, who was the Commissioner of the Social Security Administration when Plaintiff filed his Complaint.  (*See* Dkt. 1.)  Frank Bisignano became the Commissioner of Social Security on May 7, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    As of December 1, 2022, Social Security Actions under 42 U.S.C. § 405(g) are "presented for decision on the parties' briefs," rather than summary judgment motions. Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), Rule 5.

For the reasons stated below, Plaintiff's request for reversal or remand of the Commissioner's decision (Dkt. 13) should be denied and the Commissioner's Motion for Summary Judgment (Dkt. 15) should be granted.

## I.    BACKGROUND

Plaintiff filed his current application for Supplemental Security Income ("SSI") on February 25, 2019 (R. 271).[3]  Plaintiff claimed that his disability began on April 1, 2018, due to his arthritis, asthma, obesity, depression, and anxiety.  (R. 271, 297.)  His application was denied initially and on reconsideration.  (R. 120-22, 230-31.)  Plaintiff requested a hearing, and on November 10, 2022, Plaintiff appeared for an online video hearing before Administrative Law Judge Nicholas Grey ("the ALJ").  (R. 30.)  The ALJ issued an unfavorable decision on March 22, 2023, finding Plaintiff was not disabled.  (R. 30-39.)

Following the five-step sequential evaluation process under 20 C.F.R. § 416.920(a),[4] the ALJ first determined at step one that Plaintiff had not engaged in substantial gainful activity since February 25, 2019, the application date.  (R. 32.)

---

[3]    The Social Security Administrative Record ("R.") is available at Docket 12.

[4]    The Eighth Circuit described this five-step process that the Commissioner of Social Security must use as follows:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant's impairments are so severe that they significantly limit the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has impairments that meet or equal a presumptively disabling impairment specified in the regulations; (4) whether the claimant's [residual functional capacity ("RFC")] is sufficient for her to

At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity.  (R. 33.)  With respect to Plaintiff's mental impairments of an anxiety disorder and a depressive disorder, the ALJ concluded: "Because the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is non-severe."  (R. 34.)

At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  (R. 34.)

At step four, after reviewing the entire record, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") "to perform the full range of sedentary work as defined in 20 CFR 416.967(a)."[5]  (R. 35.)

---

perform her past work; and finally, if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that (5) there are other jobs in the national economy that the claimant can perform given the claimant's RFC, age, education and work experience.

*Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

[5]    Section 416.967(a) provides:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The ALJ concluded, based on the above RFC, and the testimony of the vocational expert ("VE"), that Plaintiff was capable of performing past relevant work as a bookkeeper (DOT#210-382-014 sedentary, SVP 6 work).  (R. 38.)

Accordingly, the ALJ deemed Plaintiff not disabled from the date of Plaintiff's February 25, 2019 application through the date of the ALJ's decision on March 22, 2023. (R. 39.)

Plaintiff requested review of the decision, and the Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner.  (R. 13-19.)  Plaintiff then commenced this action for judicial review. (Dkt. 1.)

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties.  The Court will recount the facts of record to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II.    RELEVANT RECORD

This summary of the medical record includes some records that predate Plaintiff's February 25, 2019 application date.  Such records are included because they may be relevant to the determination.  *See Shilitha C. v. O'Malley*, No. 23-CV-600 (ECW), 2024 WL 626444, at *2 n.4 (D. Minn. Feb. 14, 2024) ("Although SSI benefits are not payable before the month following the month in which the application was filed, medical records

---

20 C.F.R. § 416.967(a).

before the application date and close to the onset date are potentially relevant to the period for which the claimant may receive benefits.") (citing *A.S.A. v. Saul*, No. 20-CV-74 (ECW), 2021 WL 1062037, at *3 (D. Minn. Mar. 19, 2021), *appeal dismissed*, No. 21-1949, 2021 WL 4959035 (8th Cir. Sept. 15, 2021)); *cf.* 20 C.F.R. § 416.912 (requiring Social Security Administration ("SSA") to develop a claimant's "complete medical history" for at least the 12 months prior to the month the application was filed). In addition, an "ALJ may consider all evidence of record, including medical records and opinions dated prior to the alleged onset date, when there is no evidence of deterioration or progression of symptoms." *Pirtle v. Astrue*, 479 F.3d 931, 933 (8th Cir. 2007) (citing *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005)).

On March 12, 2018, Plaintiff was seen by Gene Karwoski, M.D., to establish care for his seasonal affective disorder and anxiety with panic attacks, which was also listed as part of his past medical history. (R. 366, 60.) Dr. Karwoski started Plaintiff on Prozac[6] for his seasonal depression and Buspirone HCl[7] for his anxiety. (R. 368.) Plaintiff was instructed to return in four weeks. (R. 369.)

---

[6]     Prozac is a brand name for fluoxetine, a medication used to treat depression and panic attacks. *See* Fluoxetine, MedlinePlus, https://medlineplus.gov/druginfo/meds/a689006.html (last visited May 14, 2025).

[7]     Buspirone (brand name "BuSpar") is used to treat anxiety disorders or symptoms of anxiety. *See* Buspirone, MedlinePlus, https://medlineplus.gov/druginfo/meds/a688005.html (last visited May 14, 2025).

On March 28, 2018, Plaintiff reported feeling "a little better in terms of his depression." (R. 410 (emphasis omitted).) He also reported to his dietician that he had gone out "drinking" with his cousins from Utah to celebrate St. Patrick's Day. (R. 410.)

On May 21, 2018, Plaintiff was seen by Dr. Karwoski for a follow-up regarding his anxiety and depression. (R. 58, 364.) Dr. Karwoski noted that "[i]n his last visit here he was started on Prozac and BuSpar. He feels better on these medications." (R. 364.) Plaintiff also represented that he had begun working out a local gym. (R. 364.) Dr. Karkowski assessed Plaintiff with seasonal depression, anxiety, and morbid obesity. (R. 365.) Dr. Karkowski increased Plaintiff's BuSpar to 20 mg twice daily and his Prozac to 40 mg daily. (R. 365.)

On May 29, 2018, Plaintiff reported working out at Anytime Fitness five times a week for an hour and half at time and working with a personal trainer. (R. 409.) He also claimed that his depression was better and that he had gone out to eat at a restaurant with a friend. (R. 409.)

During a July 6, 2018 appointment related to his obesity, Dr. Matthew Bettendorf's examination of Plaintiff showed that he had a normal mood and affect. (R. 407.) Plaintiff represented that he had no impairment with his functional status and needed no assistance with self cares. (R. 406.) On the same date, it was noted that Plaintiff had to temporarily discontinue his psychiatric medications because they interfered with the antibiotics treating his pneumonia. (R. 408.) Plaintiff reported being tired and run down. (R. 408.)

On July 23, 2018, Plaintiff was seen by Dr. Karwoski for a follow-up regarding his anxiety and depression.  (R. 362, 56.)  Plaintiff was taking Buspirone and Prozac.  (R. 362.)  Dr. Karwoski offered the following assessment: "Anxiety with depression - F41.8, He appears to be adequately controlled on prozac and buspar."  (R. 363.)  Plaintiff was instructed to follow-up in four months.  (R. 363.)

During a September 5, 2018 preoperative appointment regarding an upcoming gastric bariatric surgery, Plaintiff represented that he was currently taking Fluoxetine and BuSpar and had a past history of depression.  (R. 352.)  His examination showed that he was not in acute distress, he was pleasant, he was alert and oriented, and demonstrated no focal deficits.  (R. 353.)

On September 13, 2018, Plaintiff underwent a sleeve gastrectomy.  (R. 396-97.)

During a September 28, 2018 post-operation appointment, it was noted that Plaintiff had full energy and that his depression was stable.  (R. 392.)

On November 20, 2018, Plaintiff was seen by Dr. Karwoski seeking an increase the dosage of his Prozac, and sought Bultrans[8] to treat his seasonal affective disorder.  (R. 360, 54.)  Plaintiff was also taking Buspirone.  (R. 360.)  Dr. Karwoski increased

---

[8]    Buprenorphine skin patch (brand name "Butrans") is used to treat severe and persistent pain.  *See* Buprenorphine (transdermal route), Mayo Clinic, https://www.mayoclinic.org/ drugs-supplements/buprenorphine-transdermal-route/description/drg-20074363 (last visited May 14, 2025).

Plaintiff's dosage of Prozac and started him on Wellbutrin,[9] with instructions to return in three months.  (R. 361.)

On November 30, 2018, Plaintiff reported that his depression had improved after starting Wellbutrin.  (R. 391.)

On December 5, 2018, Plaintiff reported that he had recently added Wellbutrin to deal with his depression and that he was "feeling way better."  (R. 390.)

On December 21, 2018, Plaintiff underwent an assessment for state benefits with Human Development Center Carlton County related to his mental health.  (R. 372.) Plaintiff reported excessive worrying, restlessness, fatigue, a depressed mood that was seasonal in nature, difficulty with concentrating, panic attacks every week that had decreased with medication, difficulty sustaining attention for long periods of time, forgetfulness, hypervigilance, overeating, and gambling.  (R. 372-73.)  Plaintiff's PHQ-9 score[10] was 10, which is in the range of moderate depression and was consistent with his clinical presentation.  (R. 373.)  Plaintiff reported no current thoughts, plans, or intent of harm to others, and no such assessment was offered.  (R. 374.)  Plaintiff's examination showed he was disheveled in appearance with moderate grooming; demonstrated appropriate speech, behavior, mood and affect; and had adequate concentration, normal

---

[9]    Wellbutrin is a brand name for bupropion, a medication used to treat depression. *See* Bupropion, MedlinePlus, https://medlineplus.gov/druginfo/meds/a695033.html (last visited May 14, 2025).

[10]    The PHQ-9 is a screening test to measure the severity of depression.  It is scored as follows: 0-4, none-minimal; 5-9, mild; 10-14; moderate; 15-19, moderately severe; 20-27, severe.  *See* Patient Health Questionnaire-9 (PHQ-9), Nat'l HIV Curriculum, https://www.hiv.uw.edu/page/mental-health-screening/phq-9 (last visited May 14, 2025).

memory, no problems with orientation, lucid thoughts, no overt signs of psychosis, good insight with blaming of others, and diminished judgement due to impulsiveness. (R. 376-78.) There were not any instances of emotion dysregulation. (R. 378.) Plaintiff's medications at that time included Wellbutrin, Prozac, and Buspar. (R. 378-79.) The assessment for Plaintiff was Generalized Anxiety d/o and Major Depressive d/o, Moderate, Recurrent, with Seasonal Pattern. (R. 382.) Contributing factors appeared to include weight problem, recovery from surgery, applying for SSI disability, the holidays, and unemployment. (R. 382.) Recommendations included participation in outpatient therapy, services to improve functioning in mental illness symptom management, employment related, and cooking/nutrition skills. (R. 382.)

On December 28, 2018, it was noted that "[Plaintiff's] PHQ-9 score is five, which is in the range of mild depression, this is five points less than the last session, and is consistent with clinical presentation." (R. 384.) On March 4, 2019, outpatient services through the state for Plaintiff were terminated because there was no contact with Plaintiff. (R. 384.)

On May 20, 2019, State Agency Psychologist Jeffery Boyd, Ph.D., L.P., determined that Plaintiff had severe impairments of obesity; depressive, bipolar and related disorders; and anxiety and obsessive-compulsive disorders. (R. 118.) Analyzing Plaintiff under the Psychiatric Review Technique, Dr. Boyd concluded that Plaintiff did not meet the "A" criteria of listing 12.04 – Depressive, Bipolar, and Related Disorders or 12.06 – Anxiety and Obsessive-Compulsive Disorders, and that Dr. Boyd had insufficient evidence to determine the "B" and "C" criteria of those listings. (R. 118.) Plaintiff had

been scheduled for a consultative examination, but neither he nor his counsel responded, and he failed to return an activities of daily living form, rendering Dr. Boyd unable to make a determination. (R. 118-19.) The State Agency Psychologist Pay Conroe, Ph.D., L.P., made the same determination on reconsideration, also noting that no additional information was forthcoming from Plaintiff. (R. 128-29.)

During the hearing before ALJ, the ALJ granted Plaintiff's request for a consultative physical and psychological examinations. (R. 93-95, 100-02.) Plaintiff was warned that these examinations were critical:

> That said, I just need to stress to you, then, sir, how important it would be to attend those examinations, because that is going to be your case, basically. I mean, we do have some prior medical history, but no further records from your alleged onset date going forward, and so the -- what is seen at the exam is going to be critical to your case.

(R. 95.) Plaintiff represented that he would attend the examinations. (R. 102.)

However, neither Plaintiff nor his representative responded to requests to schedule a post-hearing consultative examination. (R. 30.)

### III.    LEGAL STANDARD

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or if the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g) and *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." *Id.* (quoting *Travis v. Astrue*, 477 F.3d 1037,

1040 (8th Cir. 2007). The Court "considers evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.* (citation omitted). In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004). "Assessing and resolving credibility is a matter properly within the purview of the ALJ." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citing *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) ("Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide.")).

## IV.    DISCUSSION

Plaintiff argues that the ALJ erred as a matter of law by failing to adequately assess the Plaintiff's mental limitations and failing to properly determine the RFC, rendering the hypothetical question posed to the VE inadequate. (Dkt. 13 at 12.) The Court addresses these arguments in turn.

### A.    Whether the ALJ Erred by Not Considering Plaintiff's Non-Severe Mental Impairments as Part of the RFC Analysis.

Plaintiff first points to the ALJ's decision at step two that Plaintiff had non-severe mental impairments of anxiety disorder and depressive disorder resulting in mild limitations in the broad functional areas of mental functioning, including a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or

maintaining pace; and a mild limitation in adapting or managing oneself. (*Id.*) As a result of these determinations, Plaintiff argues that the ALJ was required to discuss the effects of these non-severe impairments, especially in conjunction with the severe impairment of obesity, as part of the RFC analysis. (*Id.* at 12-13.) Plaintiff contends that the ALJ did not take into consideration the combined effects of the Plaintiff's obesity and non-severe mental impairments of anxiety and depression, even after the ALJ "promised a more detailed analysis of the mental limitations at Step 4." (*Id.* at 13.) In sum, Plaintiff argues that the ALJ did not provide any narrative regarding whether he considered Plaintiff's non-severe limitations at step four as part of the RFC, resulting in harm at step five because the hypothetical to the VE was inadequate. (*Id.* at 14-15.)

A claimant's RFC is the "most [he] can do despite his limitations, including both physical and mental limitations." *LeeAnthony C. v. Berryhill*, Case No. 18-cv-77 (NEB/TNL), 2019 WL 2343732, at *3 (D. Minn. May 13, 2019) (citing 20 C.F.R. § 416.945). An ALJ's determination of "a claimant's RFC must be 'based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Id.* (quoting *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013)). "The RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Ackerman v. Kijakazi*, Case No. 4:21-CV-814 PLC, 2023 WL 2496839, at *4 (E.D. Mo. March 14, 2023) (quoting *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007)) (cleaned up). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's

ability to function in the workplace." *Id.* (quoting *Combs v. Berryhill*, 878 F.3d 642, 646) (8th Cir. 2017)). When conducting an RFC assessment, the ALJ must consider not only those impairments that were found to be severe, but also those which were determined to be non-severe. *See* 20 C.F.R. § 416.945(a)(2); *see also Loren F. v. Kijakazi*, No. 22-CV-2862 (NEB/ECW), 2023 WL 8456174, at *16 (D. Minn. Nov. 13, 2023), *R. & R. adopted*, 2023 WL 8455690 (D. Minn. Dec. 6, 2023); *Mark E. v. Kijakazi*, No. 20-CV-2047 (PAM/JFD), 2021 WL 6066260, at *9 (D. Minn. Dec. 7, 2021) (citations omitted), *R. & R. adopted sub nom.,* 2021 WL 6063631 (D. Minn. Dec. 22, 2021) ("At step four of the sequential evaluation, the ALJ considers all severe and non-severe impairments together.").

> As stated previously, the ALJ imposed no nonexertional limitations in the RFC:

> I find that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 416.967(a).

(R. 35.)

> As a starting point, Social Security Ruling ("SSR") 96-8p states:

> In assessing the RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *5. "[A]lthough an ALJ should consider both severe and non-severe impairments when determining a claimant's RFC, if the record does not

support limitations from the non-severe impairment, the ALJ need not account for the impairment." *David S. v. Saul*, No. 19-CV-1936-ECW, 2020 WL 5255281, at *2 n.1 (D. Minn. Sept. 3, 2020) (citations omitted); *see also Hilkemeyer*, 380 F.3d  at 447 ("The ALJ's decision not to incorporate this mild pulmonary dysfunction in the RFC, as well as in the hypothetical posed to the VE, was not error because the record does not suggest there were any limitations caused by this nonsevere impairment.") (footnote omitted).

At step two, the ALJ considered Plaintiff's medically determinable mental impairments of an anxiety disorder and a depressive disorder and found that they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe."  (R. 33.)  In making this finding, the ALJ concluded that Plaintiff had "mild" limitations with respect to interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself.  (R. 33-34.)  The ALJ found no limitation with respect to Plaintiff's ability to understand, remember, or apply information.  (R. 33.)  As set forth above, the RFC did not include any of the mild limitations assessed at step two by the ALJ.  (R. 35.)

"The restrictions identified in the step two's 'paragraph B' discussions are used only to rate the severity of mental health related impairments at step two of the sequential evaluation process.  The mere fact that an individual has a medically determinable impairment does not necessarily mean that the impairment restricts the individual's ability to function in the workplace." *Carleen W. v. Kijakazi*, No. 20-CV-1216 (SRN/LIB), 2022 WL 396880, at *5 (D. Minn. Jan. 30, 2022), *R. & R. adopted sub nom.*, 2022 WL 396044 (D. Minn. Feb. 9, 2022) (marks and citation omitted); *see also*

*Chismarich*, 888 F.3d at 980 (citing *Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006) (rejecting argument that finding of mental impairment at step two required imposing related limitations in the RFC at step four because "[e]ach step in the disability determination entails a separate analysis and legal standard")).

However, courts in this District have repeatedly concluded that an ALJ must either include the mild limitations found at step two into the RFC or provide an explanation why they were not included when discussing the RFC. *See Angela D. v. Colvin*, No. 24-CV-385 (JWB/DTS), 2025 WL 539673, at *7 (D. Minn. Jan. 17, 2025) ("An RFC analysis need not recite verbatim the ALJ's findings at step two, but the ALJ must make it clear he considered limitations from step two in formulating the RFC."), *R. & R. adopted sub nom.*, *Angela D. v. King*, Civ. No. 24-385 (JWB/DTS), 2025 WL 524202 (D. Minn. Feb. 18, 2025); *Debbie L. D. v. O'Malley*, No. 23-CV-649 (DLM), 2024 WL 1331989, at *4 (D. Minn. Mar. 28, 2024) ("[A]lthough the ALJ found at step two that Plaintiff has mild mental limitations, he did not incorporate any mental limitations into Plaintiff's RFC. Nor did the ALJ include an explanation for his omission in his discussion of Plaintiff's RFC construction. Instead, the ALJ provided only a boilerplate summary explanation . . . This is not enough. The Court finds that the mild mental limitations the ALJ found at step two should have been incorporated into the RFC determination or a reason provided for their omission.") (marks and citations omitted); *Mark E.*, 2021 WL 6066260, at *10 ("Here, the ALJ's RFC did not include the mild mental limitation that the ALJ found at step two. Although an RFC need not be a verbatim recitation of step two findings, it does need to include each limitation found at

earlier steps, both severe and non-severe. Here, the ALJ followed the proper procedure at step two, but, perhaps inadvertently, omitted one of the limitations found at step two from the RFC assessment. Because this Court finds the complete omission of Plaintiff's mild mental limitation from the formulation of the RFC erroneous, this Court recommends that summary judgment be granted in Plaintiff's favor on this issue and that the case be remanded for reformulation of the RFC.") (marks and citations omitted); *Vicky R. v. Saul*, No. 19-CV-2530 (ADM/ECW), 2021 WL 536297, at *14 (D. Minn. Jan. 28, 2021) ("However, the mild mental limitations found by the ALJ should have been incorporated into the RFC determination or a reason provided for their omission, and on remand, the ALJ should either incorporate these limitations into the RFC or provide justification for their omission.") (collecting cases), *R. & R. adopted*, 2021 WL 533685 (D. Minn. Feb. 12, 2021).

Accordingly, the question is whether the ALJ actually considered the mental limitations at step two in his step four analysis and whether he adequately explained why those limitations were not included in the RFC. This assessment "need only be 'clear enough to allow for appropriate judicial review.'" *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021) (quoting *Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019)). Defendant asserts that the ALJ went into great detail when discussing Plaintiff's mental conditions at step two, and that the ALJ again referred to that analysis when assessing Plaintiff's RFC at step four. (Dkt. 16 at 7.)

While it is close, based on the ALJ's decision, the Court finds that ALJ considered the mild mental limitations at step two as part of the RFC in a manner that provides the

Court an adequate basis to review the decision.  First, when discussing the RFC, the ALJ relied on Plaintiff's daily activities, finding that they were inconsistent with his allegations of disabling impairments.  (R. 37.)  This discussion included reference to Plaintiff's mental functioning, including Plaintiff's reports that he had continued to perform bookkeeping employment and consulting, "suggesting a fair capacity for performing complex tasks and interacting with others," had tried to set up a tax service in September 2017, was training a friend on weightlifting in October 2017, was teaching a friend how to cook healthy and making meals with that friend in November 2017, and dating and interactions with friends in January 2018.  (R. 37.)

In addition, the ALJ found that were no treatment records past "approximately 2018" and that this, at least in part, "is a pattern of treatment inconsistent with his allegations."  (R. 37.)  Further, the ALJ found

> Jeffrey Boyd, PhD, LP, also opined that that there was insufficient evidence to evaluate the claimant's alleged mental impairments (Ex. 1A/7). Ray Conroe, PhD, LP, reached the same conclusion for the state agency when he evaluated the file and alleged mental impairments at the time of reconsideration (Ex. 3A/6-7). I have considered these opinions and find that there are medically determinable mental impairments, but they are not severe as discussed under my findings of the "paragraph B" criteria. These consultants did not provide work related function-by-function analysis of the claimant's abilities.

(R. 37.)

Again, the Court finds no error of law, as the ALJ's opinion demonstrates he considered Plaintiff's non-severe mental limitations during the RFC determination and then adequately explained his reasons for not including those limitations in the RFC.  The

analysis therefore turns to whether substantial evidence supports an RFC without any mental limitations.

**B.    Whether Substantial Evidence Supports the RFC Without Mental Limitations**

Plaintiff also argues that the ALJ erred as a matter of law by failing to adequately assess his mental impairments by cherry-picking medical evidence as part of the RFC analysis, including reliance upon a medical report dated January 30, 2018 referencing "friendships and a girlfriend" and another medical report dated March 28, 2018 regarding "spending time with cousins who were visiting from Utah and going out drinking on St. Patrick's Day," both of which occurred before the relevant period of claimed disability beginning April 1, 2018.  (Dkt. 13 at 17.)  Plaintiff goes on to argue that the ALJ's discussion of the medical evidence is not "full and fair" related to the Plaintiff's mental functioning because it lacks any reference to records that support the Plaintiff's claims, such as use of psychiatric medications and his claimed mental health symptoms of fatigue and concentration problems year-round, panic attacks once per week, diarrhea, breathing difficulties, headaches, heart racing, tingling in extremities and shaking, difficulty sustaining attention for long periods of time and not following through on what he has promised or committed to doing, being forgetful, talking excessively, and blurting out. (*Id.* at 18.)

Plaintiff continues by making a number of conclusory arguments that: the ALJ did not provide a sufficient explanation to allow for a meaningful review of whether his reasoning was supported by substantial evidence; Plaintiff has been harmed by the ALJ's

18

misrepresentation of the medical reports because it resulted in an RFC that lacks any limitations for the Plaintiff's mental impairments; Plaintiff has been harmed by deficient hypotheticals posed to the VE because they lacked any limitations for his mental impairments; Plaintiff has been harmed because the VE testified the Plaintiff's past relevant work would be precluded if the Plaintiff exceeded 10% of an 8-hour work day off-task, which is reasonable to expect considering his documented symptoms; the VE's testimony regarding the Plaintiff's ability to perform his past relevant work is not substantial evidence if the VE did not accurately describe the Plaintiff's abilities; and "a reasonable mind could expect for the ALJ, after a true full and fair consideration of the medical evidence, to decide the Plaintiff has not 'mild,' but instead 'moderate' or even 'marked' mental limitations, which then could require an RFC that would exclude skilled work such as the SVP 6 past relevant work that the VE testified, and the ALJ accepted, the Plaintiff could perform." (*Id.* at 18-19.)

Defendant counters that the ALJ did not engage in "cherry-picking" of the medical evidence, noting that Plaintiff did not submit any medical records to support his claim of mental functional limitations since approximately 2018. (Dkt. 16 at 5.) Defendant further argues that Plaintiff's mental conditions were controlled on medication and the ALJ's decision took into account Plaintiff's improvement on mental health medications, Plaintiff's freelance bookkeeping activities during the relevant period, and Plaintiff's documented daily and social activities, all of which supports the ALJ's RFC determination. (*Id.* at 5-6.)

19

As set forth above, the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including his own description of his limitations. *See Myers*, 721 F.3d at 527 (citation omitted). When evaluating statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims, the SSA "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2016 WL 1119029, at *4. This evaluation includes consideration of the following factors: "(i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)); *see* 20 C.F.R. § 416.929(c)(3); SSR 16-3p, 2016 WL 1119029, at *7. The ALJ also considers whether there are inconsistencies between the claimant's statements and the rest of the medical evidence, only accepting those statements that can "reasonably be accepted as consistent" with the rest of the record in making its RFC determination. 20 C.F.R. § 416.929(c)(4).

To the extent that it is Plaintiff's argument that the ALJ did not consider every factor above, "caselaw is clear the ALJ is not required to discuss each factor." *Michlitsch v. Berryhill*, No. 17-CV-3470 (MJD/TNL), 2018 WL 3150267, at *15 (D. Minn. June 12, 2018) (citing *Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir. 2017); *Halverson v. Astrue*,

600 F.3d 922, 932 (8th Cir. 2010); *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)),

*R. & R. adopted*, 2018 WL 3150225 (D. Minn. June 27, 2018).  Instead, the ALJ must

only "minimally articulate his reasons for crediting or rejecting evidence of disability."

*Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997) (quoting *Scivally v. Sullivan*, 966

F.2d 1070, 1076 (7th Cir. 1992)).  "Credibility determinations are the province of the

ALJ, and as long as good reasons and substantial evidence support the ALJ's evaluation

of credibility, [courts] will defer to [the ALJ's] decision."  *Julin v. Colvin*, 826 F.3d 1082,

1086 (8th Cir. 2016) (marks and citation omitted); *see Hensley v. Colvin*, 829 F.3d 926,

934 (8th Cir. 2016) ("We will defer to an ALJ's credibility finding as long as the ALJ

explicitly discredits a claimant's testimony and gives a good reason for doing so.")

(citation omitted).  To be clear, while *Polaski* and other cases use the term "credibility" in

connection with subjective complaints, "[SSR] 16-3p eliminates use of the term

'credibility' and clarifies that the Commissioner's review of subjective assertions of the

severity of symptoms is not an examination of a claimant's character, but rather, is an

examination for the level of consistency between subjective assertions and the balance of

the record as a whole."  *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020).

However, while "largely changing the terminology," SSR 16-3p did not change "the

substantive analysis to be applied."[11]  *Id.*

Contrary to Plaintiff's assertions, the ALJ provided a sufficient explanation to

allow the reviewing court to undertake a meaningful review of whether his reasoning was

---

[11]    Because the substantive analysis of subjective complaints has not changed, the
Court continues to cite cases that use the term "credibility."

supported by substantial evidence. *See Grindley*, 9 F.4th at 631. Here, the ALJ discounted Plaintiff's mental symptoms in part by relying upon Plaintiff's daily activities of living, which cut against more onerous restrictions based on his mental limitations, including any assertion that he must have limited contact with others. (R. 33, 37, 38.) This included his report on March 28, 2018, which is contemporaneous with his April 1, 2018 claimed date of onset of disability, that he had gone out "drinking" with his cousins from Utah to celebrate St. Patrick's Day (R. 410); his report on May 29, 2018 that he had been working out at Anytime Fitness five times a week for an hour and half at time, and working with a personal trainer (R. 408); his report on the same date that he had gone out to a restaurant with a friend (R. 409); and that he had been engaging bookkeeping at least a week before his hearing before the ALJ (R. 97). While Plaintiff "need not prove []he is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (marks and citations omitted), his daily activities can nonetheless be seen as inconsistent with his subjective complaints and may be considered in assessing the severity of his subjective complaints, *see Vance*, 860 F.3d at 1121. In particular, given Plaintiff's continued ability to work as a bookkeeper, the Court finds that the ALJ's decision to discount Plaintiff's subjective mental limitations (including with respect to interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself) is supported by substantial evidence. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) ("Seeking work and working at a job while applying for benefits, are activities inconsistent with complaints of disabling pain.") (citing *Piepgras*

*v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996); *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995)).

In addition, Plaintiff represented at the hearing that he ended his employment as a bookkeeper not because of his medical conditions, including his mental limitations, but because his former employer, his mother, did not have enough business to continue to justify having an employee. (R. 37, 98.) It was proper for the ALJ to discount Plaintiff's complaints based on this testimony. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding that that although claimant's long work history supported her "subjective complaints of disabling pain," "the fact that [she] was laid off from her position, rather than forced out due to her condition" undercut her claim of disability) (quoting *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998)); *see also Gregory v. Comm'r, Soc. Sec. Admin.*, 742 F. App'x 152, 155 (8th Cir. 2018); *Dunahoo*, 241 F.3d at 1039.

The Court also rejects Plaintiff's argument that the ALJ "cherry-picked" the medical evidence or that the ALJ's discussion of the medical evidence is not "full and fair" with respect to Plaintiff's mental functioning. (Dkt. 13 at 17-18.) Contrary to Plaintiff's assertion, the ALJ did consider Plaintiff's medications (R. 36) and ultimately concluded that Plaintiff's medical treatment was inconsistent with his allegations regarding his functioning. (R. 37.) There is no requirement that an ALJ follow each decision as to an RFC limitation with a list of specific, supporting evidence. *See Audrey M.H. v. Berryhill*, No. 17-CV-4975 (ECW), 2019 WL 635584, at *9 (D. Minn. Feb. 14, 2019).

On March 12, 2018, Plaintiff established care for his seasonal affective disorder and anxiety with panic attacks, and was started on BuSpar and Prozac. (R. 366-69.) It is important emphasize that a diagnosis alone does not require a finding of disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). While Plaintiff's medications were increased, he reported on March 28, 2018 that he was feeling a little better, and by May 21, 2018, Plaintiff reported that he felt better on the medications and thought he would be approved shortly for bariatric surgery. (R. 364, 410.) Plaintiff sought no further mental health care until July 23, 2018. (R. 362.) In the interim, Plaintiff reported on July 6, 2018 (when seeing a doctor related to his obesity) that he had no impairment with his functional status and needed no assistance with self cares, and the doctor's examination showed that he had a normal mood and affect. (R. 406-07.) On July 23, 2018, Plaintiff's treating provider, Dr. Karwoski, observed that "[h]e appears to be adequately controlled on prozac and buspar." (R. 363.) Plaintiff's medical records in September 2018 demonstrate that his depression was stable. (R. 353, 392.) Plaintiff was then not seen for his mental health until November 20, 2018, at which time he sought and obtained medication for his seasonal disorder, and by the end of November and the beginning of December 2018, Plaintiff reported "feeling way better." (R. 360, 390-91.) This pattern of limited, conservative, and effective treatment supports the ALJ's assessment of Plaintiff's level of mental functioning for the purposes of the RFC. *See Milam*, 794 F.3d at 985 (holding that a pattern of limited and conservative treatment is a proper factor for an ALJ to consider in weighing subjective reports and supports a denial

of benefits); *see also Hensley*, 829 F.3d at 933-34 ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)); *see also Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) ("Infrequent treatment is also a basis for discounting a claimant's subjective complaints.") (citation omitted).  While Plaintiff now cites his complaints made during his December 2018 evaluation for state mental health benefits (*see* Dkt. 13 at 17-18),[12] his mental status examination was largely normal.  (R. 372-84.)  And ultimately, Plaintiff failed to show up to the second appointment with a mental health provider, which resulted in a discontinuation of services in early March 2019.  (R. 385.)

Given this record of Plaintiff's daily activities, his employment and that his employment ended due to lack of work rather than any impairment in functioning, and Plaintiff's conservative and limited medical treatment, along with the absence of any evidence that Plaintiff received treatment for mental impairments in 2019 and Plaintiff's decision not to undergo consultative examination after the hearing before the ALJ (even after the ALJ stressed the importance of Plaintiff attending the consultative examinations), the Court finds that the ALJ's decision not to incorporate the mild mental limitations found at step two into the RFC is supported by substantial evidence.  *See Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) ("[T]he conservative treatment, management with medication, and lack of required surgical intervention all support the

---

[12]    The Court notes that "an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."  *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (cleaned up).  Indeed, the ALJ considered this evidence as part of his decision. (*See* R. 33, 37.)

ALJ's RFC determination.") (citation omitted); *Crawford v. Colvin*, 809 F.3d 404, 410 (8th Cir. 2015) ("[T]he symptoms [the claimant] attested to are inconsistent with the objective medical evidence found on the record, and hence, need not be given great weight when considered against objective medical evidence.") (citation omitted).  Indeed, while Plaintiff invites the Court to examine how a "a reasonable mind" would have weighed the medical evidence (Dkt. 13 at 19), "it is not this Court's role to reweigh that evidence." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022) (citing *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)).  Instead, the Court must affirm an ALJ's decision if it is supported by substantial evidence, even if the Court would have reached a different conclusion as to Plaintiff's mental functioning and even if substantial evidence supported a contrary outcome.  *Travis*, 477 F.3d at 1040.

With respect to Plaintiff's challenges to the hypothetical posed by the ALJ to the VE (Dkt. 13 at 18-19), a hypothetical question need only include the impairments and limitations that the ALJ finds are credible and are substantially supported by the record as a whole.  *See Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (a properly phrased hypothetical includes limitations mirroring those of claimant); *see also Lacroix*, 465 F.3d at 889 ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (citation omitted).  Here, the ALJ's hypothetical question included all of Plaintiff's limitations found to exist by the ALJ and set forth in the ALJ's description of Plaintiff's RFC.  (R. 103-04.)  Given the Court's finding that the decision not to include mental limitations in the RFC is supported by substantial evidence, and the fact that

Plaintiff is not contesting the physical RFC, the Court finds that the RFC is supported by substantial evidence. Consequently, the hypothetical question the ALJ posed to the VE was proper, and the VE's answer with respect to Plaintiff's ability to perform his past work as a bookkeeper constitutes substantial evidence supporting the Commissioner's denial of benefits. *See Lacroix*, 465 F.3d at 889.

\* \* \*

For all these reasons, the Court finds that Plaintiff's request for remand of the Commissioner's decision should be denied and that the Commissioner's request that the decision be affirmed be granted.

## V.    RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1.     Plaintiff's request for reversal or remand of the Commissioner's decision (Dkt. 13) be **DENIED**;

2.     The Commissioner's Motion for Summary Judgment (Dkt. 15) be **GRANTED**; and

3.     The Complaint (Dkt. 1) be **DISMISSED WITH PREJUDICE**.

DATED:  May 14, 2025                    *s/Elizabeth Cowan Wright*
                                        ELIZABETH COWAN WRIGHT
                                        United States Magistrate Judge

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).